McDonald *et al.*

*v.*

Logan.

(*Supreme Court of Appeals of Virginia, Nov. 16, 1899.*)

[34 S. E. Rep. 490.]

### Attorney and Client—Compensation—Contingent Fees—Expenses.

A stockholder engaged attorneys to recover a debt due his company, and for their services they were to retain a percentage for all fees and disbursements, and hold the stockholder harmless from liability. The claim was established, but declared subordinate to a mortgage. The stockholders, to secure a bidder at a sale of the mortgaged premises, gave a bonus. A receiver was appointed for the company, and was allowed commission and attorney's fees, of all of which such stockholder had full knowledge: *held*, that as the bonus, receiver's counsel fees, and commissions were necessary charges incurred in the creation of the fund, they should be deducted from the entire fund collected, and not borne entirely by the attorneys.

Appeal from circuit court, Clarke county.

Bill by John P. Logan against McDonald & Moore. From a decree in favor of complainant, defendants appeal. Reversed.

*R. T. Barton* and *M. McCormick,* for appellants.

*U. Laurence Boyce* and *R. E. Byrd,* for appellee.

Keith, P., delivered the opinion of the court.

John P. Logan entered into a contract dated November 8, 1883, with McDonald & Moore and McComas, attorneys at law, in which it is recited that, the Shenandoah Valley Railroad

Company being indebted to the Central Improvement Company, these attorneys undertook to institute necessary legal proceedings for the recovery of what may be due the Central Improvement Company on behalf of Logan and other stockholders who have placed, or shall hereafter place, their stock in the hands of said attorneys, and to prosecute the same earnestly, and to make no compromise not satisfactory to the holders of a majority of the stock thus placed in their hands. In consideration of their services, the attorneys were to retain 50 per cent. of the amount recovered in said litigation in full satisfaction of all fees, costs, and other disbursements, and Logan was to be in no event "responsible for any costs or fees other than the 50 per cent. heretofore mentioned." The Central Improvement Company had issued certificates of stock to the amount of $138,000. It had contracted debts amounting to about $380,000, and its only asset was a claim against the Shenandoah Valley Railroad Company.

Without undertaking to review the litigation by which this demand was ultimately established, it suffices to say that from the suit of Crumlish's administrator against the Shenandoah Valley Railroad Company, which was instituted in the circuit court of Jefferson county, where the bill was dismissed upon demurrer, and taken to the court of appeals of West Virginia, where it was reversed, to the case now under consideration, we can recall no litigation which has displayed greater tenacity of purpose, been more vigorously prosecuted, or has more severely tested the resources of those to whom its conduct was confided ; and, now that the result has been achieved, the debts of the Central Improvement Company have been paid, and the stockholders have been reimbursed, it is difficult to comprehend how the result has been accomplished. The suit of Crumlish's administrator, above referred to, having been reversed in the court of appeals of West Virginia, and remanded to the circuit court of Jefferson county, such proceedings were had as ultimately established the right of the Central Improve-

ment Company against the Shenandoah Valley Railroad Company.

A suit on the part of the Fidelity Insurance, Trust & Safe-Deposit Company was instituted in the circuit court of Jefferson county, in which that court held that the liens of the plaintiff against the Shenandoah Valley Railroad Company were superior to the claim of the Central Improvement Company. This case was taken to the court of appeals of West Virginia, was reversed, and the claim of the Central Improvement Company again established. It was, however, declared to be a lien upon the Shenandoah Valley Railroad Company subordinate to a mortgage of more than $6,000,000. Owing to circumstances which need not be here stated, the only probable bidder at a sale of the Shenandoah Valley Railroad was the Norfolk & Western Railroad Company. It therefore became necessary to induce some person or corporation to become a rival bidder, or else the road would be purchased by the Norfolk & Western Railroad Company by bidding the amount of the first lien, which, of course, would result in the destruction and entire loss of the amount claimed by the Central Improvement Company. Such a bidder was secured, but to accomplish this it was necessary to offer a bonus of $200,000, afterwards reduced by arrangement to $160,000, as an inducement; the result of the negotiation being a contract between those representing the Central Improvement Company and the Norfolk & Western Railroad Company, by which the latter agreed to pay all the debts of the Central Improvement Company, and to purchase its stock at the sum of $500,000, thus making the recovery of the Central Improvement Company on behalf of its creditors and stockholders about $880,000 ; the attorneys for the stockholders of the Central Improvement Company undertaking to transfer to the Norfolk & Western Railroad Company all the stock in the Central Improvement Company owned and represented by them as attorneys, amounting to $125,000, par value, and guarantying to the Norfolk & Western

Railroad Company that the entire stock of the improvement company did not exceed the sum of $138,000. The attorneys acting for the improvement company also agreed to become responsible for all costs in the suit of Crumlish's administrator, and to relinquish all claims for fees or commissions except such as were to be paid them out of the $500,000 paid for the stock of the Central Improvement Company ; and the said attorneys further agreed to indemnify the railroad company against the suit of any holder of stock in the Central Improvement Company not represented by them.

In the course of the litigation, it became necessary to appoint a receiver to prosecute the demands of the Central Improvement Company, and to receive and distribute any recovery it might make. This receiver was allowed by the circuit court of Jefferson county a fee of $200,000 to pay counsel employed by him, and about $16,000 of commissions upon the sum which he recovered. This decree was taken to the court of appeals of West Virginia, where it was affirmed, with a modification which does not affect the question now under consideration. See Crumlish's Adm'r v. Railroad Co., 40 W. Va., at page 640, 22 S. E. 95. The opinion in that case states, among other things, that the "stockholders, of the Central Improvement Company found, by their decree for the sale of the Shenandoah Valley Railroad, that, in order to reach their claim of $800,000, they would have to bid the sum of $6,600,000. In this emergency they called a meeting of the stockholders, formal or informal, to see if anything could be done. A committee was appointed, charged with the duty of securing a bidder for the road, and it was empowered to use the assets of the company, at its discretion, to accomplish that purpose. This, I suppose, would be regarded as an informal meeting of owners of stock ; but there was present, either by present action or subsequent ratification, 67-69 of the stock. It resulted in their securing a bidder by giving such bidder $200,000 out of the stock thus to be realized in full. This bonus was afterwards

reduced to $160,000, with which sum the fund in court was charged before distribution. This was done by the consent of the numerous creditors of the Central Improvement Company, whose claims were thus paid to the last cent, amounting to about $382,000, and without such arrangement neither they nor the subordinate stockholders' claim would have realized one dollar. This is shown to have been proper, and eminently wise and discreet, and, under the circumstances of the hard times of 1873, fortunate.    Such is shown to be the fact as far as the probabilities can show a fact by an overwhelming array of testimony ; for there is no attempt to show any fact tending in any degree to establish the contrary.    This was a matter for the owners, and the court has nothing to say on the subject.    But Mr. McFadden says he did not participate in forming the committee, and is not bound by their action.    Surely, I cannot be mistaken in saying, as against him, in order to pay the creditors of his elsewise insolvent company, the charging of the sum with this $160,000 was right.    It was also right, in view of the interest of the stockholders as against him, the only one having any interest who is heard to complain.

"The court also charged the fund before distribution with attorney's fees to the amount of $200,000.    This was based on a private arrangement for contingent fees of one-fourth and more of the recovery, made between client and attorney, with which, for the most part, the court has nothing to do, and as to which creditors of this elsewise hopelessly insolvent company, whose claims aggregate $381,996.71, do not complain, and which is agreed to and insisted upon as right by 134 in value out of 138 of the stockholders.    I am not sure but what, taking into consideration the interest of the creditors of the Central Improvement Company, it was right ; but we do not wish, under any circumstances, to give our sanction to a growing evil of the courts, viz. without any contract between client and attorney, their charging large fees against the fund to be distributed."

Among the stockholders thus represented was the appellee, John P. Logan. This record, and the exhibits filed with it, show that he was privy to, and had full knowledge of, all that was done. In his bill in the case now under consideration, he claims that by the contract between himself and his attorneys, the substance of which was stated at the beginning of this opinion, all fees, costs, and disbursements of the litigation upon which he was about to enter were to be borne by his attorneys, and paid by them out of their share of the recovery, and that it was in derogation of his rights to charge him with any part of the fee of $200,000 allowed the attorneys of the receiver, or of the sum of $16,000 allowed the receiver as commissions, or $162,000 paid Calvin S. Brice in order to secure a competing bidder at the sale of the Shenandoah Valley Railroad Company. The circuit court disallowed his claim as to the $162,000, but sustained his contention with respect to the commissions of $16,000 to the receiver and as to the fee allowed his attorneys, which results in a recovery by the plaintiff of about thirteen hundred and odd dollars.

On behalf of the defendants, it is pointed out that, by the strict terms of the contract of November 8, 1883, they were entitled to one-half of all that was recovered by the Central Improvement Company against the Shenandoah Valley Railroad Company, and, if we are to stick in the letter of the contract, it might bear that construction. The whole course of this litigation, however, shows that a more reasonable interpretation than that now suggested and insisted upon by either party has been placed upon this contract. The circuit and appellate courts of West Virginia, and the circuit court of Clarke county, concurred in allowing the $162,000, the bonus above referred to, as a charge upon the entire fund, to be deducted before any distribution of it should be made. It has been regarded by all the courts as a necessary charge incurred in the creation of the fund to be distributed, and therefore to be borne by all interested in that fund. We do not perceive how, upon principle,

fees to counsel and commissions to the receiver can be held not to be a charge. As we have seen, in the suit of the Fidelity Insurance, Trust & Safe-Deposit Company, the whole value of the assets claimed by the Central Improvement Company was destroyed. The fee, as we have before said, was a large one, but the amount involved was very great, the fee was wholly contingent, and, in addition to all this, counsel incurred serious hazard, not only of failing to recover the fund out of which their fees were to be paid, but of a personal responsibility for costs. All these considerations doubtless operated upon the circuit court of Jefferson when the allowance to counsel was made, and the court of appeals in the quotation from its opinion above made, while it is cautious not to approve in terms what was done, is careful not to reverse the decree upon that point. For the foregoing reasons, we are of opinion that not only the sum paid to Calvin S. Brice, but the fees of counsel and the commissions to the special receiver, should be allowed. The decree of the circuit court of Clarke county must be reversed, and the cause remanded, to be further proceeded in in accordance with this opinion.